FILED

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA, DISTRICT

12 MAR 21   AM 9: 14

U. ... . .. . . COURT
MIDDLE ... . . . . . OF FLORIDA
TAMPA, FLORIDA

Eddie Montalvo, Plaintiff
IN PROPIA PERSONAM
v.
MERCHANDISE PICK UP SERVICE
FAMILY THRIFT CENTERS, et., al. EM
Respondents,

CASE No. 8:12-CV-599-T-17MAP

## INITIAL CLAIM

### Back pay, Unpaid wages, Overtime Wages per FLSA, Vacation Pay and Retaliation

Plaintiff, EDDIE MONTALVO, brings suit before this Honorable Court against MERCHANDISE PICK UP SERVICE, FAMILY THRIFT CENTERS, et., al., Respondents; reason for CLAIM are as follows:

1). Plaintiff was under paid for work (additional routes performed).

2). Plaintiff worked over one-thousand (1,000) hours off the clock on behalf on Respondents WITHOUT COMPENSATION.

3). Plaintiff was paid Half-time wages as overtime wages.

4). Plaintiff did not receive VACATION PAY which was approved and Plaintiff was entitled to.

5). Plaintiff's Termination from Employment stemmed from Plaintiff's questioning the manner in which Plaintiff's wages were being manipulated, calculated and paid.
(SEE ATTACHED STATEMENT OF FACTS, for these points of CLAIM).

Plaintiff asks this Honorable Court to GRANT the sum of $25,000.00 as COMPENSATORY DAMAGES, $50,000.00 as DECLARATORY DAMAGES, $100,000.00 as PUNITIVE DAMAGES and any other relief the Court deems necessary.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of March 2012, County of Hillsborough, Florida.

Eddie Montalvo

Eddie Montalvo, Plaintiff
IN PROPIA PERSONAM
4312 Mariners Cove Court #104
Tampa, Fl 33610
813-438-0415



1

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

EDDIE MONTALVO,
IN PROPIA PERSONAM, Plaintiff,
-v-                                               CASE No.
MERCHANDISE PICK UP SERVICE INC.,
FAMILY THRIFT CENTERS INC., et. al.
Defendants,

### Statement of Facts - Eddie Montalvo

On or about July 19, 2010, I began employment with Merchandise Pick Up Service Inc., (MPS); operated by Family Thrift Centers. I was hired by General Manager Ms. Elena Westrop. My position was that of a driver. My duties consisted of picking up donations (primarily used clothing) from strategically placed Donations boxes (Drop Boxes-marked AMERICAN RED CROSS) in various areas of Central-West Florida, as well as, scheduled residential donation pickups, on behalf of Merchandise Pick Up Service (Family Thrift Centers).

When initially hired by MPS, my initial pay was for the amount of $75.00, per route, eventually being raised to $85.00, per route; with the exception of certain routes paying $100.00, per route; pay-days were on a weekly basis. At the beginning of MPS' functions here in Tampa, Florida, when a driver was sent out on a double run (2 routes combined or, 2 or more zip codes to cover), the driver was paid double for that day, i.e., the total sum of each individual route pay ($75 twice or whatever each route paid for that day), independent of one another. Number of stops varied from say; 80 stops for one zip code and 60 stops for another; never more than 140 stops before cancellations (an example); or there would be a combined route (double route) of a Drop Box route with up to 30 stops and a residential route with no more than 85 stops. Drop Box routes had no more than 28-30 boxes per route and were in same county. Gradually, I began being given 150 to 200+ stops, per day in multiple zip codes, a 12 to 16 hour day, in some instances, for the single pay of $85.00. Many times I worked 70 – 80 hour weeks being compensated at 'Half-time pay' or by the hour and/or a dollar ($1.00) per stop for additional routes, the latter two when said stops were under 40 stops per se; clearly much less than the $75 - $100 pay per route. Pay varied based on routes and often times the aforementioned methods were used to consider pay (wages). Many times I was paid by the hour (to be investigated to actually know exact amount I was paid on those occasions) or $1.00 (one dollar) per stop for residential routes with fewer than 40 stops.

1.

These methods confused me as I was being compensated based on MPS' own terms and not on the terms initially agreed upon when hired. I was being compensated per route with half-time wages as overtime wages. I questioned this method and addressed it with Ms. Westrop on many occasions. Ms. Westrop denied my being eligible for one-and-one-half-times of overtime wages claiming I was 'exempt' under the Motor Carriers Act (MCA) and the Fair Labor Standards Act (FLSA). On a couple of occasions, I worked a 22-23 hour shift without rest and proper nourishment. I've been written up (for 'alleged other reasons') for voicing my discontent in the manner in which my pay varied and because the work load grew and I wasn't being compensated as I initially was being compensated, as aforementioned. In addition, I was forced/directed to do my maps at home (this is when a Residential route is assigned for the following day; each driver MUST take their maps home and route out their Residential Route based on Zip Code(s) assigned), with NO compensation for the time put into working on Maps on my personal time. Average time for routing out each zip code varied but approximated itself to 3 hours per zip code because some coordinates were incorrect or were not portioned at all (proof of this is in my meticulous notations on route sheets). Ms. Westrop was aware that I have very poor eyesight and that it would take me a lot longer than expected to finish my maps/route sheets. Furthermore, after a 14-18 hour day we drivers want to go home to our families as we would enjoy our down time at home on off-hours without having to keep working once at home. I suggested to Ms. Westrop that hiring a logistic specialist would help us out significantly. I had been doing this for 11 months. Ms. Westrop mentioned (after my having done maps on my personal time for 10 months) that we can do maps at work. There is only one computer for 5-6 drivers, impossible to work out. Ms. Westrop's practice has been to work each of us (Drivers) to our fullest capacity and some. Many times she would have us return to an address we have allegedly missed even if it is an hour or two away from our current location; or, she would assign us multiple routes/additional zip codes to cover, regardless of distance, for no extra pay. Ms. Westrop has full knowledge of how long many of these routes would take and, at times assigned us drivers consecutive 14-16 hours days. On numerous occasions, I shared my concern with Ms. Westrop of fatigue and under-nourishment on these long hours and that the Department of Transportation (DOT) requires drivers not drive more than 11-13 hours. Ms. Westrop stated that we drivers do not fall under the DOT Regulations because we weren't interstate drivers.

In November 2010 (Exact date will be portioned as I have misplaced Medical record, also on file at MPS-Tampa), I telephoned Ms. Elena Westrop, General Manager at MPS-Tampa, at around 4:20am regarding my not being able to breathe properly due to my having Chronic Obstructive Pulmonary Disease (COPD), not having medication and, that I needed to go to the emergency room and would miss work. Ms. Westrop insisted I work the shift because

2.

she had no substitute. Although with a serious breathing condition that causes me to suffer shortness of breath, I went to work; Under duress.  At around 8:30am, that morning, during my route, I again telephoned Ms. Westrop stating I was going to the nearest Hospital's Emergency Room because my breathing was very shallow and that my COPD exacerbated. Ms. Westrop insisted once again I finish my route. I told Ms. Westrop that I could not. She then directed/ instructed me to return to the warehouse and unload the donations from the truck before I go to the Emergency Room. I was afraid to lose my job and did as instructed. I failed, however, to unload the vehicle because I was having difficulty breathing. I was written up for not unloading the vehicle and Ms. Westrop docked my paid for the day and suspended me for another.

**Company Policy Manual, Part III(B)** clearly states, in part, **"if you feel it is not possible to Safely do any part of your job, it is your responsibility to inform your supervisor."** Part III(C) states, in part, **"You are NOT required to do anything you consider to be unsafe."** I felt I had to immediately inform Ms. Westrop at 4:21am, on date in question, of my condition. Company Policy Manual Part III(D) – **INCIDENT RESPONSE PROCEDURE IN CASE OF AN INJURY,** which ironically only applies to Texas employees of the same national company (Family Thrift Centers), states in part, that any medical condition while on the job must be addressed immediately.  Part III(D)(3) **MEDICAL TREATMENT IF MEDICAL ASSISTANCE IS NEEDED** states; "The Company will make arrangements to get you immediate medical treatment at a nearby clinic or hospital," in part. Ms. Westrop ignored **'Company Policy'** and insisted I keep going.  I was under duress and afraid of losing my job so I did. I went to the emergency room immediately after I returned company vehicle to the warehouse. I was treated for several hours as a result of my 'COPD Exacerbating,' (Documentation on MPS's File).

Company Policy Manual, Part IV, **OTHER WORKPLACE POLICIES AND PROCEDURES,** sudv.10, reads in part, "The HR Manager has the right to request a second opinion and WILL arrange an appointment at Company expense for a medical evaluation of the Employee by a Company designated physician."  Ms. Gloria Stephens (HR Manager) informed me that she wanted an additional medical evaluation and physician report and I told her I had no Medical Insurance and could not afford medical expense associated with another medical evaluation. I asked that the Company send me to a physician at Company expense and was told that the Company does not cover health insurance for its workers. I have worked continually with severe breathing problems due to my lack of medication in most instances. Ms. Westrop is aware of this. On various occasions I complained to Ms. Westrop that many Drop Boxes had Mold in them and that we needed the appropriate protective gear to perform our duties safely.  Ms. Westrop's response was, **"It is what it is." "All Drop Boxes must be emptied out completely regardless if they have Mold or not."**

3.

Residential donation pickups per Company policy is to knock on the doors of those scheduled donors. Many times we knock and are questioned as to whom we are? Who do we "really work for?" "Are you really with the Red Cross?" Many times we are told to never come back because the donor has been harassed for a whole week with calls for donations. We tell donors we are from the American Red Cross. I dislike being call a liar or that I am falsely representing the American Red Cross. It is a stressful situation not to mention an embarrassing one on many occasions. Proof of this fact (complaints) can be found by following this link http://800notes.com/Phone.aspx/1-813-881-1700/3. Furthermore, since these occurrences, MPS has another name as well, Charity Clothing Pick Up Florida (See http://www.clothingpickupflorida.com/).

It took Ms. Westrop four (4) months to put up Hour and Wage Division Information posters, ADA posters, FLSA Posters and Workers Compensation info, etc... This, after I continually stressed the importance of having same available to employees. Soon afterwards, I began receiving write-ups for one disciplinary reason or other.

I have been under constant duress and have been experiencing a serious lack of sleep because of this entire matter. I had worked long grueling hours and I did not receive the proper compensation nor did I have much personal time with my family (Time records will support claim). Ms. Westrop changed work schedules continually and assigned me "double routes" for the pay of $85.00. I often drove more than 13 hours a day. I have worked as much as 21-23 hours nonstop. Then there's the overtime matter. I was being paid "Half-Time" by the company. I believe I was under paid and erroneously considered 'exempt' from overtime wages (one-and-one-half times the regular rate of pay) and, on several occasions my pay was incorrect (short of actual wages earned) which then had to be re-calculated. (I would like a recalculation of ALL hours I worked for MPS, while employed by MPS). Although MPS may have registered for, and have classified themselves as, a 'Motor Carrier' for the purposes of the Motor Carriers Act and, to conform to the Rules and Regulations as prescribed by the Secretary of the Department of Transportation, what MPS does as a whole cannot consider said company a 'motor carrier' under said 'ACT' as MPS-Tampa drivers do not drive commercial vehicles weighing over 10,001 gross maximum weight (GMW), do not handle "GOODS FOR COMMERCE" as prescribed by the Motor Carriers Act and the FLSA, do not and are not expected to drive interstate routes. Furthermore, some of the donated items picked up by us drivers are sold, donated or discarded right here in Tampa, Florida. When I addressed this fact and the fact that I wasn't being paid time-and-one-half of overtime wages nor for work done at home, on my personal time, I became the subject of an investigation of my work performance and, hence, terminated from employment for, allegedly falsifying documents (route sheets).

4.

Not until May 2011, did MPS/Ms. Westrop portion its drivers with a chart of overtime pay which indicated a "half-time" pay for overtime wages; this after former employees filed a lawsuit against the company.  An investigation is warranted.

I respectfully ask this Honorable Court to grant relief in the sum of $25,000.00 in compensatory damages, $50,000.00 in declaratory damages, $100,000.00 in punitive damages and, any other relief the Court deems necessary.

I declare under penalty of perjury that the aforementioned is true and correct to the best of my knowledge.

Executed this 12th day of March 2012, County of Hillsborough, State of Florida.

Eddie Montalvo, Plaintiff - IN PROPIA PERSONAM
4312 Mariner's Cove Court #104
Tampa, FL 33610
e.montalvo62@gmail.com
813-438-0415

5.

/////